[No. 7318.    Decided June 29, 1908.]

WILLIAM E. BOWEN, *Appellant*, v. DEMPSEY LUMBER
COMPANY, *Respondent*.[1]

VENDOR AND PURCHASER—CONTRACTS—PERFORMANCE.    A contract
by a vendee to build a mill on the property purchased by January
1st, 1907, is substantially complied with so as to avoid the payment
of $20,000 stipulated damages for failure to do so, where it appears
that the contract stipulated that if the vendee failed to secure rea-
sonable assurance of the construction of a spur track to the mill
from a railroad company, then it should have fourteen months from
and after receiving such assurance within which to complete the
contract, and it appeared that the vendee only received an expres-
sion of opinion and no positive assurance as to the spur track until
April 15, 1906, and completed the mill April 27, 1907.

Appeal from a judgment of the superior court for Pierce
county, Carey, J., entered November 26, 1907, upon findings
in favor of the defendant, after a trial on the merits before
the court without a jury, in an action on contract.    Affirmed.

*E. R. York* and *T. W. Hammond*, for appellant.

*James M. Ashton* and *W. H. Hayden*, for respondent.

HADLEY, C. J.—This is an action to recover liquidated
damages for an alleged breach of contract.    The defendant
had for several years been purchasing timber in the state of
Washington, and had, after investigation of different sites,
determined to construct a sawmill at Everett, for the purpose
of manufacturing the timber into lumber.    About this time
the Tacoma chamber of commerce learned of the purpose of
the defendant, and at once sought to induce it to locate its
mill in Tacoma.    A proper site for the mill purposes being an
important element, the plaintiff and the defendant were
brought together through the instrumentality of the cham-
ber of commerce, to negotiate for a site upon certain Tacoma

[1]Reported in 96 Pac. 427.

tide lands for the purchase of which the plaintiff held a con-
tract from the state of Washington. The plaintiff in his own
name held the contract for the purchase from the state, but
he in fact represented a syndicate composed of several per-
sons. In this way he held the contract with the state for the
purchase of about one hundred and four acres of tide lands
lying east of the Puyallup river, in front of Tacoma, and he
and his associates were seeking a purchaser.

After negotiations, the plaintiff and defendant reached an
agreement whereby the plaintiff was to transfer to the mill
company forty acres of this land, the consideration being
that the mill company should pay $1,000 per acre and build
on the land conveyed a sawmill with capacity equal to that
of the new mill of the St. Paul & Tacoma Lumber Company.
The agreement provided that the mill company should com-
mence the construction of the mill during the year 1905, and
have the same finished and in actual operation on or about
the 1st day of January, 1907, and in default thereof should
pay the plaintiff the sum of $20,000 as agreed and liquidated
damages. It was, however, recited in the agreement that the
mill company was then negotiating with the Northern Pa-
cific Railway Company for the construction of a spur track
from its railroad to the land, and it was agreed that, if the
mill company failed to receive from the railway company
during the year 1905 reasonable assurance that it would
construct the spur track to the mill site, then the mill com-
pany should be allowed sufficient additional time within which
to complete the mill to make fourteen months from and after
the date of receiving such assurance. Under this agreement
the mill company paid the plaintiff the $40,000 cash on the
purchase price, and undertook the construction of the mill
on the terms aforesaid and as an additional part of the pur-
chase price. The lands were at the time valued at materially
more than $1,000 per acre, and the plaintiff accepted the
prospective enhancement in value of his adjoining tide lands

by reason of the construction of the mill as the equivalent of the additional value. The remaining lands were afterwards sold by plaintiff for $3,000 per acre.

In pursuance of the aforesaid agreement, the mill company repeatedly negotiated with the railway company and urged the latter to give reasonable assurance that the spur track would be built. During these negotiations the mill company learned that the railway company would not enter into an agreement obligating it to construct the spur, and furthermore that it was not in position to make such agreement or give reasonable assurance that it would build the extension, for the reason that it had not a franchise from the city or the permission of the government to bridge and cross the Puyallup river, or a right of way across private property, all being necessary in order to reach the property of the mill company. On December 13, 1905, the engineer of the railway company wrote a letter to the mill company, expressing his belief that the spur would be constructed by April 15, 1906, the letter being a mere expression of opinion and containing no positive assurance or obligatory promise that it would be constructed. After that time the railway company was engaged in litigation concerning its right of way over private property for this spur track, the litigation involving the actual right to condemn, it being contended that the purpose was for a private and not a public use. These legal impediments were not finally terminated and removed until the latter part of June, 1906. Meantime the mill company had proceeded with the construction of its mill, but inasmuch as the spur track was necessary for the delivery of the heavy machinery at the mill, the forwarding of the machinery was delayed until the difficulties in the way of the spur track construction were removed. Thereupon the machinery was ordered forward, and the mill construction proceeded, approximately $300,000 cash having been expended thereon before January 1, 1907. The latter date, it will be

remembered, was the date for the completion of the mill if the
reasonable assurance of the construction of the spur track
should be forthcoming in the year 1905. The mill was finally
completed in substantial particulars, and operated on April
27, 1907.

The plaintiff alleged, as a breach of the agreement to
build the mill, that the work of construction was not com-
menced in the year 1905; but this was abandoned at the
trial. It was also alleged that the mill was not completed
and operated by January 1, 1907; and as a further breach
it was alleged that the mill was not completed within fourteen
months after the reasonable assurance was received that the
spur track would be constructed. Judgment was demanded
for $20,000, the amount specified in the agreement as liqui-
dated damages. These allegations were denied. The cause
was tried by the court without a jury, and resulted in a
judgment for the defendant, from which the plaintiff has
appealed.

There can be but little dispute about the most of the facts
above stated. The appellant disputes that the mill was fully
completed and in operation at the time we have stated. The
court found that the respondent did not, during the year
1905, receive reasonable assurance that the railway company
would construct its spur track, and that it did not receive
such assurance until about June 30, 1906; that notwith-
standing the want of such assurance, respondent commenced
the construction of its mill plant during the year 1905, and
proceeded therewith in good faith; that it was the intent of
the agreement concerning the construction of the mill, as
appears from its terms and all the facts and circumstances
entering into and surrounding its execution, that respondent
should have the use and benefit of the spur track in the con-
struction of its mill; that it did not secure such use and
benefit until July 26, 1906; that it completed its mill plant
and had the same in operation with the capacity required by

the conditions of the agreement, on April 27, 1907, and within fourteen months after receiving from the railway company the reasonable assurance contemplated by the agreement. As one of the conclusions of law, the court found that reasonable assurance, under the particular circumstances of this agreement, is equivalent to positiveness or certainty, which cannot exist until the party assuring has the power and ability to make good such assurance. We think the findings and the facts we have stated in detail are amply sustained by the evidence in the record. The record of the testimony is extensive, and we shall not undertake to discuss it. The conclusions of law and judgment properly follow from the facts. There was a substantial compliance with the terms and spirit of the contract, the benefit of which has been reaped by the appellant; and we believe it manifestly appears from the evidence before us that it would be unjust to now require respondent to pay appellant $20,000, or any other sum.

The judgment is affirmed.

FULLERTON, RUDKIN, ROOT, and MOUNT, JJ., concur.

DUNBAR and CROW, JJ., took no part.